ELMER D. AND LOLA STALCUP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stalcup v. Commissioner
Docket No. 19867-91
United States Tax Court
T.C. Memo 1995-43; 1995 Tax Ct. Memo LEXIS 50; 69 T.C.M. (CCH) 1777; January 30, 1995, Filed *50 Decision will be entered under Rule 155. P performed cutting and "skidding" services in the Black Hills National Forest. Each day, P transported himself and his cutting and skidding equipment from his residence to the first cutting site of the day within the forest, between cutting sites in the forest, and from the last cutting site back to his residence. P deducted the full cost of transporting himself and his equipment both from and to his residence as well as between cutting sites within the forest. R allowed the costs associated with P's traveling between job sites, but disallowed, as nondeductible commuting expenses, the portion of P's costs incurred in traveling from and to P's residence. Held: P is allowed to deduct the full cost of transporting himself and his equipment from his residence to the first work site of the day in the forest and from the last work site back to his residence. Walker v. Commissioner, 101 T.C. 537 (1993), followed. Held, further, P may not deduct any of the costs associated with maintaining an office, garage, and storage shed at his residence. Elmer D. Stalcup and Lola Stalcup, pro se. For respondent: *51 Michael W. Lloyd. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1988 in the amount of $ 1,064. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues remaining for decision are: (1) Whether petitioners are entitled to deduct the costs incurred by Elmer D. Stalcup in driving from his residence to his first work site in the Black Hills National Forest (Forest) and from his last work site of the day back to his residence. (2) Whether petitioners are entitled to deduct expenses associated with a home office. Additionally, respondent determined that petitioners were liable for increased self-employment tax. This determination is computational, depending upon our resolution of the issues which affect the amount of petitioners' self-employed income. Petitioners are Elmer D. Stalcup (petitioner) and Lola Stalcup, husband and wife. At the time that petitioners filed their petition, they resided in Lead, South Dakota. All the facts *52 have been stipulated and are found accordingly. The stipulations of facts and the attached exhibits are incorporated herein by this reference. During 1988, petitioner earned a living by cutting and "skidding" timber, under various contracts, at multiple locations in the Forest. Skidding is the task of pulling cut trees to a particular location to be loaded onto trucks and hauled to a sawmill. At all relevant times, petitioners resided in a house located in Lead, South Dakota. On average, petitioner spent five days per week, 10 hours per day, performing timber-related services in the Forest. Additionally, petitioner averaged 16 hours per week performing various tasks at his residence and the area appurtenant thereto related to his timber services, including but not limited to: (1) Record keeping, (2) equipment maintenance, and (3) telephone communication. Appurtenant to petitioners' residence was a 10-foot by 10-foot garage, and a storage shed with the same dimensions. Within the garage, petitioner stored and maintained some of his cutting and skidding equipment. Additionally, in the garage, petitioner stored tools used to maintain automobiles unrelated to petitioner's timber *53 business. Within the storage shed, petitioner stored timber-related equipment, as well as a lawn mower unrelated to his timber work. During the year in issue, petitioner performed timber cutting and skidding services under contracts with Hamm S. Wood Products Inc., Tracy J. McManigal, and McLaughlin Sawmill Company at four different sites within the Forest. Each day, petitioner used either a stock four-wheel drive 1985 Dodge pick-up truck or a stock four-wheel drive 1978 Dodge pick-up truck to travel and transport his equipment: (1) From his residence to the first cutting site, (2) between cutting sites, and (3) from the last cutting site back to his residence. For 1988, petitioner deducted, on a Schedule C, $ 7,139, the entire cost of using the trucks to travel and transport equipment both from and to his residence and between the various work sites. Respondent allowed $ 3,998, the cost of using the truck between various work sites during the day, but disallowed $ 3,141, the costs associated with traveling from and to petitioner's house at the beginning and end of each day. Respondent has since conceded $ 635 of the disallowed driving expenses because this amount represents *54 the additional cost incurred by petitioner in having to haul his cutting and skidding equipment to the Forest and to plow snow when it was required. Additionally, on a Schedule C, petitioners claimed $ 656 for expenses associated with maintaining a home office. Respondent disallowed the full amount of these claimed expenses on the basis that they did not meet the requirements of section 280A. Alternatively, respondent disallowed petitioners' telephone expense on the grounds that it was not properly substantiated. Regarding petitioner's expense of driving from his residence to the first cutting site of the day and from the last cutting site to his residence, we decided this issue in favor of the taxpayers, on almost identical facts, in Walker v. Commissioner, 101 T.C. 537 (1993). We treated the position of the Commissioner, as stated in Rev. Rul. 90-23, 1990-1 C.B. 28, to be a concession that the taxpayers in that case were entitled to deduct the full amount of similar truck expenses since the taxpayers established that they met the factual requirements of the ruling. Walker v. Commissioner, supra at 550. *55 The same situation prevails here. Since Walker was decided, respondent, in a number of factually indistinguishable cases, has launched an assault on the soundness of our decision in Walker. In all of these cases we resisted respondent's challenge. See Burleson v. Commissioner, T.C. Memo. 1994-130; Nikkila v. Commissioner, T.C. Memo. 1993-628; Boice v. Commissioner, T.C. Memo. 1993-627; Callison v. Commissioner, T.C. Memo. 1993-626; Burleson v. Commissioner, T.C. Memo. 1993-625. Once again, respondent's attempt to persuade us to recant our holding in Walker must fail, for the reasons stated in Walker. We note that on June 30, 1994, respondent, in Rev. Rul. 94-47, 1994-29 I.R.B. 6 (July 18, 1994), abandoned the position taken in Rev. Rul. 90-23, supra, and in reliance upon which we decided Walker v. Commissioner, supra, and its progeny. Rev. Rul. 94-47 *56 was published subsequent to the submission and briefing of this case, and we are not inclined to apply it retroactively. See Burleson v. Commissioner, T.C. Memo. 1994-134. Given the fact that this case is factually indistinguishable from Walker and the cases which followed, we find it unnecessary to once again restate our reasoning, and consequently hold for petitioner on this issue. With respect to the use of petitioners' residence as a home office, section 280A provides in pertinent part: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions For Certain Business Or Rental Use; Limitation On Deductions For Such Use. (1) Certain Business Use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling *57 unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.
Petitioners bear the burden of proving that the requirements of section 280A have been satisfied. Rule 142(a). Thus, in order for petitioners to properly deduct the costs associated with petitioner's performance of various administrative and maintenance tasks at his residence, petitioner must demonstrate that one of the exceptions listed in section 280A(c)(1) applies to the facts of this case. First, we note that section 280A(c)(1)(B) is not applicable because petitioner did not meet with patients, clients, or customers at his residence. We therefore only address the possible application of either the principal place of business exception found in section 280A(c)(1)(A), or the separate structure exception found in section 280A(c)(1)(C). *58 In Walker v. Commissioner, we held that whether a taxpayer's residence qualifies as the taxpayer's principal place of business for purposes of section 280A "depends primarily upon the relative importance of the activities performed there and the relative amount of time spent there in comparison with the taxpayer's other places of business." Walker v. Commissioner, supra at 546 (citing Commissioner v. Soliman, 506 U.S.    ,    , 113 S. Ct. 701, 706 (1993)). As mentioned previously, Walker is factually indistinguishable from the present case, and in Walker we agreed with respondent that the taxpayer failed to establish that his residence qualified as his principal place of business. Id.
In the present case, petitioners cannot establish that their residence qualifies as petitioner's principal place of business. The importance of petitioner's cutting and skidding services, which are performed in the Forest, far outshadow the importance of petitioner's administrative tasks performed at his residence. Likewise, petitioner averages 50 hours per week working in the Forest, which substantially exceeds *59 his average 16 hours per week working at home. Therefore, we hold that any expense associated with petitioner's use of his residence to perform administrative tasks in connection with his timber trade is nondeductible under section 280A. Although petitioner's detached garage and storage shed might, under certain circumstances, qualify as a separate structure under section 280A(c)(1)(C), section 280A(c)(1) requires that separate structures must be used "exclusively" for storing and/or maintaining petitioner's timber equipment in order that the costs incurred be deductible. Exclusive use means use solely for the purpose of carrying on the taxpayer's trade or business. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 57, 186. Specifically, the Senate committee report provides "with respect to a separate structure not attached to the dwelling unit, if the taxpayer uses such structure (e.g., a detached garage) for both trade or business and personal purposes, the exclusive use test is not met." Id. Even were we inclined to apply the rule of Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930) to attempt a reasonable allocation *60 of petitioner's "shed" expenses between business and personal use, see Lind v. Commissioner, T.C. Memo. 1985-490, the record contains insufficient facts upon which such an allocation could be based. To reflect the foregoing, Decision will be entered under Rule 155.